## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN DAVID GARCIA,

      Plaintiff,

vs.                                       No. CIV 08-0295 JB/WDS

THE UNITED STATES OF AMERICA and
BEN GARCIA,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), filed January 9, 2009 (Doc. 15).  The Court held a hearing on March 19, 2009.  The primary issue is whether the Court has subject-matter jurisdiction over the claims against the Defendant United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 to 2680 ("FTCA").  Whether the Court has jurisdiction turns on two other issues: (i) whether Defendant Ben Garcia's actions at a wedding, which allegedly led to Plaintiff John David Garcia being severely injured, were taken in the scope of his employment as an Isleta police officer; and (ii) whether the allegations in the Complaint improperly attempt to evade being characterized as an assault or battery.  Additionally, the United States may be arguing that John David Garcia must exhaust tribal court remedies before initiating a suit in federal court.  Although brought as a motion to dismiss, the Court concludes that the merits of the claims under the FTCA are bound up with the jurisdictional questions presented here, and the Court will therefore convert the motion to dismiss into a motion summary judgment.  Because there are genuine disputes of material fact whether Ben Garcia was acting in the scope of his employment and whether the

underlying conduct involves assault or battery, and because John David Garcia does not need to exhaust tribal remedies to bring his FTCA claims against the United States, the Court will deny the motion.

## FACTUAL BACKGROUND

Like law enforcement officers for many tribes, Isleta police officers perform their duties pursuant to a contract under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450 to 458bbb-2 ("ISDEAA") with the Bureau of Indian Affairs ("BIA") to provide law enforcement services to Pueblo of Isleta residents.  See Exhibit C to Memorandum, 638 Contract CTM20T70521 between BIA-Southern Pueblos Agency and Pueblo of Isleta, C-2 Statement of Work, at 20 (Doc. 16-4)("Statement of Work").  Ben Garcia is a former member of the Isleta police force.  This lawsuit arises out of an incident involving Ben Garcia and John David Garcia at a wedding on the Pueblo of Isleta, an incident which left John David Garcia with a shattered jaw.

On December 9, 2006, John David Garcia was at the St. Augustine Church in the Pueblo of Isleta for his daughter's wedding.  See Complaint for Damages ¶ 9, at 3, filed March 20, 2008 (Doc. 1)("Complaint"); Exhibit A to Memorandum, BIA Office of Law Enforcement Services, Professional Standards Division, Internal Affairs Report, Case Number: KOL 120-06-088, at 9, 11 (Doc. 16-2)("BIA Report").  "He was wearing a white tuxedo, with a flower in the lapel." Complaint ¶ 9, at 3.  Before the wedding ceremony began, he took his granddaughter to the restroom in another part of the church complex where a different wedding party was underway.  See id. ¶ 10, at 3.  The parish priest had advised John David Garcia's wedding party that they could use that restroom.  See id.  John David Garcia waited outside the restroom for his granddaughter.  See id.

Around the same time, Ben Garcia was attending the other wedding party into which John David Garcia had wandered.  See Declaration of George Jojola, Chief of Police for the Isleta Police

Department ¶ 5, at 2 (executed January 9, 2009)(Doc. 16-5)("Jojola Decl."). Ben Garcia was attending his brother's wedding. See id. He was off-duty and was not in uniform. See id.; BIA Report at 9, 11.

What happened next is subject to somewhat conflicting stories. An altercation ensued and left John David Garcia with serious injuries. Other than these facts, however, it is not clear exactly what happened. While all the evidence before the Court is fairly consistent, some of the details are different.

John David Garcia's version is that, while waiting, Ben Garcia and several others approached him and accosted him. See Complaint ¶ 11, at 3. Ben Garcia told him that he was in a room that was off limits and demanded that he leave. See id. When John David Garcia tried to explain that he was waiting for his granddaughter, Ben Garcia said: "Don't you realize I am a police officer[?]" Id. ¶ 12, at 3. At that point, John David Garcia began walking away, but felt a blow to the back of his head that knocked him to the floor, and he was then kicked as he lay on the ground. See id. ¶¶ 12-13, at 3-4. He got up and went to walk his daughter down the aisle, using a handkerchief to stem the bleeding from his mouth, and then was taken to an emergency room with a broken jaw and broken teeth. See id. ¶¶ 14-15, at 4. He underwent surgery; endured six weeks with a wired jar and months of convalescence; had plates inserted in his jaw, which remain there; lives with a permanent scar; and has continued pain to this day. See id. ¶¶ 15, 17-18, at 4-5.

Although initially asserting that Ben Garcia, in effect, attacked him, John David Garcia has come to admit that he is not clear on what exactly happened. During the hearing on this motion, Timothy Vollman, John David Garcia's counsel, stated that, although John David Garcia initially said he was "cold cocked," he later conceded that he did not see what happened and that his injuries resulted from hitting his head on a pole as he fell. Transcript of Hearing at 13:6-14 (taken March

19, 2009)(Vollman)("Tr.").[1]

Documents that the United States has submitted tell a somewhat different story.  A BIA report indicates that one witness saw John David Garcia and Ben Garcia arguing at the door and holding each other's shirt, but did not see what happened next, until he walked closer and saw John David Garcia on the ground.  See BIA Report at 11.  Sergeant Darin Mallon of the Isleta Police Department wrote a brief report indicating that Ben Garcia and several others asked John David Garcia to leave and were escorting him from the area when John David Garcia pushed Ben Garcia. See Exhibit B to Memorandum, FBI Investigation File at 11, Incident Narrative: IP06001776 (Doc. 16-3)("FBI File").  Ben Garcia pushed back.  John David Garcia approached again, attempting to strike Ben Garcia, at which point Ben Garcia grabbed his hand, pulling him off balance and forcing him to the ground.  See id.  Another report from the Isleta Police Department states that John David Garcia allegedly "placed his hand on the mid section of a female wearing a backless dress," prompting Ben Garcia to intervene.  FBI File at 13, Memorandum from Sgt. Abeita to Chief Bill Kellogg at 1 (dated January 9, 2009).  The report states that John David Garcia began to leave, but then turned, pushed Ben Garcia, and then swung at him, at which point Ben Garcia pushed John David Garcia out the door where he fell.  See id.

A statement from Ben Garcia relates that he saw an altercation starting over someone using the restroom and then John David Garcia placing his hands on a woman during the course of the altercation.  See FBI File at 15, Ben Garcia Statement ("Garcia Stmt.").  Several people began looking at Ben Garcia, expecting him to step in.  See in.  He approached John David Garcia and asked him to leave.  John David Garcia began to leave, but then turned and pushed Ben Garcia.  In

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

response, Ben Garcia pushed him away and told John David Garcia that he was a police officer.  See id.  Ben Garcia grabbed John David Garcia's forearm when he tried to strike Ben Garcia, and John David Garcia fell off balance, before getting up and leaving.  See id.

After the incident, the various reports and other documents were written as part of investigations conducted into the matter.  As the United States emphasizes, the reports indicate that the investigating agencies considered the incident to be an off-duty occurrence.  See, e.g., BIA Report at 1; Jojola Decl. ¶¶ 4-6, at 1-2.  The BIA determined that "[t]here was insufficient evidence to prove or disprove the allegation" against Ben Garcia.  BIA Report at 1.  Ben Garcia was later "terminated from the [Isleta Police Department], in part, due to his off-duty conduct on December 9, 200[6]."  Jojola Decl. ¶ 8, at 2.[2]

Recently, Ben Garcia, no longer an Isleta police officer, was deposed for a jurisdictional deposition.  In his deposition, Ben Garcia was asked whether "it fell upon [him], as the police officer, to get in between everybody?"  Deposition of Ben Garcia at 33:18-20 (taken January 7, 2009)(Doc. 18-5)("Garcia Depo.").  Ben Garcia answered "[y]es."  Id. at 33:21.  Later in his deposition, he indicated that, after he identified himself as a police officer, he thought of himself as being a police officer at the time.  See id. at 51:12-16.  Shortly thereafter, he states that he did not become involved in the incident "on behalf of the Isleta Police Department."  Id. at 52:11.

**PROCEDURAL BACKGROUND**

On March 20, 2008, John David Garcia filed his Complaint.  The Complaint asserts that the Court has jurisdiction over the United States pursuant to the FTCA.  The Complaint also alleges that John David Garcia's "personal injuries. . . were proximately caused by the negligence, wrongful acts

---

[2] The Jojola Declaration refers to 2009.  Given the context, the Court presumes the date to be a typographical error and that it refers to the 2006 incident.

and omissions of a person deemed an employee of the United States [Ben Garcia], on December 9, 2006, as that employee was acting within the scope of his employment as a law enforcement officer of the Pueblo of Isleta." Complaint ¶¶ 4, 7, at 2-3. There are four claims for relief laid out in the Complaint: (i) negligence and recklessness, see id. ¶¶ 23-24, at 6; (ii) intentional infliction of emotional distress, see id. ¶ 30, at 7; (iii) negligent supervision, certification, or training, see id. ¶¶ 34-37, at 8; and (iv) "wrongfully and unjustifiably" injuring John David Garcia, id. ¶ 41, at 9.

When Ben Garcia failed to file an Answer, John David Garcia filed a motion for default against him. See Motion for Default Judgment Against Defendant Ben Garcia in His Individual Capacity, and Memorandum in Support, filed May 16, 2008 (Doc. 2). At a hearing on that motion, the Court discussed with the parties whether the Court had jurisdiction to enter a default judgment and whether, if the Court lacked jurisdiction over the United States, the Court would have jurisdiction over the case against Ben Garcia. Jan Elizabeth Mitchell, Assistant United States Attorney, stated that she believed that the Court lacked jurisdiction over the United States and that the case against Ben Garcia likely had to go to tribal court. See Transcript of Hearing at 4:1-12 (taken November 24, 2008)(Mitchell). The Court decided that it would refrain from deciding the motion for default until the United States had filed its motion to dismiss on jurisdictional grounds, so that the Court would have a better sense whether it had jurisdiction over claims against Ben Garcia. See id. at 10:7-19 (Court).

The United States now moves to dismiss the case against it under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The United States contends that the Court lacks subject-matter jurisdiction over the claims against it, because the United States has not waived its sovereign immunity. The United States advances two main arguments: (i) that the FTCA does not apply because Ben Garcia was not acting in the scope of employment during the incident; and (ii) that the

FTCA does not apply because John David Garcia's claims arise out of a battery and are therefore barred because Ben Garcia does not qualify as a federal law-enforcement officer.  Additionally, the United States argues that John David Garcia should have exhausted tribal-court remedies before coming to federal court.

On the first point, the United States asserts that whether Ben Garcia was acting within the scope of his employment is a question of state law.  In this case, that would be New Mexico law. See Defendant United States of America's Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6) at 8, filed January 9, 2009 (Doc. 16)("Memorandum").  New Mexico courts, the United States argues, have established the test for scope of employment as being whether the acts were "'fairly and naturally incidental to the employer's business assigned to the employee,'" and whether the acts were done "while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.'"  Id. (quoting Cain v. Champion Window Co. of Albuquerque, 142 N.M. 209, 213, 164 P.3d 90, 94 (Ct. App. 2007)).  During the incident, the United States maintains, Ben Garcia was not acting within the scope of his employment because he was not on duty, was at a family wedding reception, was  not in uniform, and acted from a personal motive.  See Memorandum at 9. The United States contends that Ben Garcia's allegedly stating that he was a police officer does not convert his off-duty conduct, taken for personal reasons, into actions within the scope of his employment.  See id. at 9-10.

The United States next argues that the exception to the FTCA's waiver of immunity under 28 U.S.C. § 2680(h) bars the lawsuit.  Although John David Garcia has not pled a battery claim, the United States contends that the Court must look at the substance of the claims, which, the United

States maintains, demonstrates that the Complaint here is premised on battery. See Memorandum at 12. The United States asserts that Ben Garcia was not enforcing federal law during the incident and so a claim premised on battery is barred. See id. at 11-13.

Finally, the United States argues that John David Garcia has not exhausted tribal court remedies. The United States contends that it is likely that the Isleta tribal court has jurisdiction. See id. at 15.[3] Because of the policy promoting tribal self-government and comity, the United States maintains that this case should first begin in tribal court. See id. at 13-14.

John David Garcia argues that, because of the additional materials the parties have submitted, the United States' motion should be converted into a motion for summary judgment. See Response in Opposition to United States' Motion to Dismiss at 2, filed January 30, 2009 (Doc. 18)("Response"). He agrees with the United States that scope of employment is analyzed under New Mexico law, but contends that the United States reaches the wrong result. See Response at 9. He argues that Ben Garcia intervened in the incident because the people at the wedding party knew he was a police officer and expected him to deal with the altercation. See id. at 11. John David Garcia also notes that Ben Garcia, in parts of his deposition, states he was acting as a police officer. See id. at 11-12 (citing Garcia Depo. at 51). John David Garcia further contends that Ben Garcia was effectively investigating a sexual assault, because he became involved after hearing that John David Garcia was allegedly touching a woman. See id. at 11.

John David Garcia also argues that 28 U.S.C. § 2680(h) is inapplicable. He notes that he raises a negligent-hiring claim and maintains that his other claims also cannot be fairly characterized as battery. See Response at 15-18. He contends that, even if his claims can be construed as battery,

---

[3] Whether, in its briefing, the United States argues that the Isleta tribal court has jurisdiction over the claims against Ben Garcia only, or over the case as a whole, is unclear.

Ben Garcia was authorized to enforce federal law and thus § 2680(h) does not apply.  <u>See</u> Response at 18.  Finally, he argues that exhaustion of tribal court remedies is not required under the FTCA. <u>See</u> Response at 19-20.

In reply, the United States first contends that the Court may consider additional materials without converting a rule 12(b)(1) motion into a rule 56 motion, but also asserts that the Court lacks jurisdiction even under the summary judgment standard.  <u>See</u> Defendant United States of America's Reply to Plaintiff's Response in Opposition to United States' Motion to Dismiss (Doc. No. 18) at 1-3, filed February 23, 2009 (Doc. 20)("Reply").  The United States argues that the evidence shows that Ben Garcia was acting from a personal motive and not on behalf of the Isleta police.  <u>See id.</u> at 4-6.  The United States also argues that the touching to which Ben Garcia was allegedly responding would not be classified as a federal crime and that, under <u>Narney v. Daniels</u>, 115 N.M. 41, 846 P.2d. 347 (Ct. App. 1992), Ben Garcia was not acting in the scope of his employment.  <u>See</u> Reply at 7-8.  The United States reiterates its contention that 28 U.S.C. § 2680(h) bars this lawsuit, maintaining that, absent a special commission, Ben Garcia was not authorized to enforce federal law and that his allegation that Ben Garcia delivered a blow to his head "sounds suspiciously like a claim of assault and battery."  Reply at 10.  Lastly, the United States argues that John David Garcia has failed to show why tribal-court exhaustion is not required here.  <u>See</u> Reply at 10-12.

At the hearing on the motion to dismiss, Mr. Vollman stated that John David Garcia no longer contended, as he once did, that Ben Garcia struck him, but that instead Ben Garcia's negligent actions and unwise attempt to remove him from the area led to Ben Garcia falling and hitting a pole, causing his severe injuries.  <u>See</u> Tr. at 13:6-14, 14:2-5 (Vollman).  Mr. Vollman noted that John David Garcia has a non-functioning prosthetic arm, which may have played a role.  <u>See</u> <u>id.</u> at 15:13-15.  Ms. Mitchell agreed that Ben Garcia being off duty was not determinative, although

she maintained that it was a factor to be considered.  See Tr. at 39:15-25 (Court & Mitchell).  Ms. Mitchell argued that Ben Garcia's subjective belief that he was acting as a police officer was irrelevant.  See id. at 40:1-19.

## LAW REGARDING MOTIONS TO DISMISS
## UNDER RULE 12(b)(1)

A plaintiff bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182, 189 (1936).  See Byrd v. EPA, 174 F.3d 239, 243 (D.C. Cir. 1999); Miller v. United States, 710 F.2d 656, 662 (10th Cir. 1983).

Rule 12(b)(1) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  A court has broad discretion to consider affidavits or other documents to resolve disputed jurisdictional facts under rule 12(b)(1).  See Holt v. United States, 46 F.3d at 1003.  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion.  See Holt v. United States, 46 F.3d at 1003 (citing to Wheeler v. Hurdman, 825 F.2d 257, 259 n. 5 (10th Cir.), cert. denied, 484 U.S. 986 (1987)).  Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999), cert. denied, 528 U.S. 964 (1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th

Cir. 1997).

## LAW REGARDING THE FTCA

As with any jurisdictional issue, the party bringing the suit against the United States bears the burden of proving that sovereign immunity has been waived.  See James v. United States, 970 F.2d 750, 753 (10th Cir. 1992).  It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  The terms of the United States' consent define the parameters of federal-court jurisdiction to entertain suits brought against it.  See United States v. Orleans, 425 U.S. 807, 814 (1976); Ewell v. United States, 776 F.2d 246, 248 (10th Cir. 1985).  When the United States waives its immunity from suit, a court should neither narrow the waiver nor "take it upon [itself] to extend the waiver beyond that which Congress intended."  Smith v. United States, 507 U.S. at 203 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)).

In 1948, Congress enacted the FTCA, which waived the sovereign immunity of the United States for certain torts that federal employees commit.  See F.D.I.C. v. Meyer, 510 U.S. at 475. Sovereign immunity is waived only for certain torts that United States employees cause while acting within the scope of his or her office or employment.  See 28 U.S.C. § 1346(b).  In 1990, Congress extended the FTCA waiver of sovereign immunity to allow the United States to be sued in tort for the negligent conduct of tribal employees that occurred in the performance of an Indian Self-Determination Act contract.  See Pub. L. 101-512, Section 314, 104 Stat. 1915, 1960.

This extension of the FTCA, however, does not operate as a waiver of sovereign immunity in all respects.  "Congress was careful to except from the Act's broad waiver of immunity several classes of tort claims."  United States v. Vario Airlines, 467 U.S. 797, 808 (1984).  The waiver of immunity set forth in 28 U.S.C. § 1346(b) is subject to thirteen statutory exceptions enumerated in

28 U.S.C. § 2680.  See Kosak v. United States, 465 U.S. 848, 852 (1984).

Specifically, under section 2680(h), the United States retains its sovereign immunity with respect to "[a]ny claim arising out of assault, battery," and other enumerated intentional torts.  The exception is, however, subject to the following:

> Provided, that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) . . . shall apply to any claim arising . . . out of assault, battery, false imprisonment, false imprisonment, false arrest, abuse of process, or malicious prosecution . . . .  For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violation of Federal law.

28 U.S.C. § 2680(h).  By this proviso, section 2680(h) waives the defense of sovereign immunity for suits against the United States for certain intentional torts that its law enforcement officers commit while acting within the scope of their employment.  See Dry v. United States, 235 F.3d 1249, 1257 (10th Cir. 2000).  An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).

When a § 2680 exception to the FTCA bars a claim, the court lacks subject-matter jurisdiction to hear the case.  Although liability under the FTCA generally depends on the law of the state where the allegedly negligent or wrongful act or omission occurred, see 28 U.S.C. § 1346(b)(1), whether a claim is excepted by § 2680(h) is a question of federal law.  See United States v. Neustadt, 366 U.S. 696, 705-06 (1961); Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993).  The law of the place where the alleged negligent conduct took place determines the scope of employment under the FTCA.  See Williams v. United States, 350 U.S. 857, 857 (1955)(per curiam); Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970); 28 U.S.C. § 1346(b).

## NEW MEXICO LAW REGARDING SCOPE OF EMPLOYMENT

In New Mexico, an employee's acts are within the scope of employment if the act "was something fairly and naturally incidental to the employer's business assigned to the employer's business assigned to the employee," and the act "was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee." Cain v. Champion Window Co. of Albuquerque, 142 N.M. at 213, 164 P.3d at 94 (citing UJI 13-407 NMRA). Scope of employment is generally an issue of fact that a court must resolve in each case in light of its particular facts. See Nabors v. Harwood Homes, Inc., 77 N.M. 406, 407-08, 423 P.2d 602, 603 (1967); Medina v. Fuller, 126 N.M. 460, 465, 971 P.2d 851, 856 (1998). In evaluating whether an act was in the scope of employment, the New Mexico Court of Appeals has also articulated a four-part test: "[whether] the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonably close to the authorized area, and (4) is actuated, at least in part, by a purpose to serve the employer." Narney v. Daniels, 115 N.M. at 49, 846 P.2d at 355.

## ANALYSIS

While the United States moves to dismiss the case against it under rules 12(b)(1) and 12(b)(6), the jurisdictional issues in this case under the FTCA are tied up with the merits of John David Garcia's claims, which also arise under the FTCA. Because the parties have submitted materials to supplement the pleadings, the Court will convert the motion into a motion for summary judgment. Applying the summary judgment standard, the Court concludes that there is material dispute of fact whether Ben Garcia was acting in the scope of his employment. Additionally, the Court cannot conclude that John David Garcia's allegations necessarily arise out of an assault or

battery, and so 28 U.S.C. § 2680(h) does not bar his claims.  Finally, John David Garcia need not exhaust remedies in tribal court before pursuing claims against the United States.  The Court therefore cannot determine, at this time, that it lacks subject-matter jurisdiction over the claims against the United States.

I.     **THE COURT WILL APPLY THE SUMMARY-JUDGMENT STANDARD TO THE FACTUAL ISSUES HERE.**

Before turning to any other issues, the Court must first address what standard the Court should employ in considering the evidence.  The United States contends that, on a rule 12(b)(1) motion, the Court may consider evidence from outside the pleadings and resolve jurisdictional facts itself.  By contrast, John David Garcia argues that the Court should consider the matter under the usual summary judgment standard and thus cannot resolve any disputed factual issues.  While the Tenth Circuit has not spoken directly to this question in the specific context here, Tenth Circuit precedent indicates that scope of employment under the FTCA is intertwined with the merits of an FTCA claim.

On a rule 12(b)(1) motion, the Court may consider material not found in the pleadings and may even resolve factual issues upon which jurisdiction depends.  See Holt v. United States, 46 F.3d at 1003 (holding that a court may "resolve disputed jurisdictional facts under Rule 12(b)(1)").  As the United States acknowledges in a footnote, however, see Reply at 2 n.1, the Court may not engage in this judicial factfinding if the jurisdictional issues are intertwined with the merits, see Holt v. United States, 46 F.3d at 1003 ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.").  "When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the

-14-

jurisdictional claim and the merits are considered to be intertwined." Wheeler v. Hurdman, 825 F.2d at 259.  Accord Holt v. United States, 46 F.3d at 1003.

Two Tenth Circuit cases lead the Court to conclude that the merits and jurisdictional issues are intertwined here.  In the first case, Holt v. United States, the plaintiff sued the United States under the FTCA for an accident that killed his parents, raising negligence theories.  As part of maintaining the right water level at the Keystone Dam, water was released through a special system.  The plaintiff alleged that mist which formed as a result of the release of water froze on the highway, creating an ice slick that caused his parents' fatal crash.  See Holt v. United States, 46 F.3d at 1002.  The federal government asserted immunity under the Flood Control Act of 1928, 33 U.S.C. § 702c.  Because  the government's immunity under § 702c did "not depend on the FTCA which provide[d] the substantive claims in the case," the Tenth Circuit affirmed the district court's treating the question as coming under rule 12(b)(1).  Holt v. United States, 46 F.3d at 1003.  This holding indicates that the FTCA is understood as providing the cause of action for state-law torts such as negligence, and thus where, as in this case, immunity turns on the scope of employment, which is also part of the FTCA, the rule 12(b)(1) standard is appropriate.  See Trujillo v. United States, 313 F.Supp.2d 1146, 1149 (D.N.M. 2003)(converting rule 12(b)(1) challenge to FTCA claim to rule 56 motion).  Cf. Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir. 1991)(holding that "the jurisdictional issue and the merits are intertwined" when determining whether discretionary function exception to FTCA waiver of sovereign immunity applies).

A second case, Wheeler v. Hurdman, did not involve the FTCA, but involved a similar question to the one presented here: whether a party qualified as an employee under federal statutes.  The plaintiff was suing under several anti-discrimination laws, and the Tenth Circuit noted that whether the plaintiff fit the definition of employee was a jurisdictional question.  See 825 F.2d at

259.  All the discrimination statutes both provided the plaintiff's cause of action and required that

a plaintiff be an employee.  See id.  The Tenth Circuit held that the merits were therefore intertwined

with the question whether the plaintiff was an employee under the statutes.  See id.  Similar to

Wheeler v. Hurdman, where the plaintiff had to show that he was an employee, here John David

Garcia must show that Ben Garcia was acting as an employee under the FTCA.

      While the Tenth Circuit has not addressed the precise question here, other circuits have

reached the result the Court does, although not all circuits confronting the question have.  The

United States Courts of Appeals for the Fifth and Eleventh Circuits have held that scope of

employment under the FTCA is intertwined with the merits of an action brought under the FTCA.

See Montez v. Department of Navy, 392 F.3d 147, 149, 151 (5th Cir. 2004)(holding that

jurisdictional and merits issues were intertwined when question was scope of employment under the

FTCA); Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)(same).  The United States

Court of Appeals for the Eighth Circuit, in Johnson v. United States, 534 F.3d 958 (8th Cir. 2008),

indicated that it failed to see how the merits of a negligence claim under the FTCA were intertwined

with the scope of employment issue, but ultimately found that there were no disputed material facts

on the scope of employment.  See id. at 963-64.  Whether the Eighth Circuit has actually held that

scope of employment is not bound up with the merits of an FTCA claim is thus somewhat unclear.

Ultimately, though, the weight of authority from other circuits also favors finding the merits of an

FTCA action to be intertwined with the scope of employment.

      This result is not surprising.  Scope of employment determines liability in a standard

respondeat superior case.  Like a private employer, the United States' vicarious liability for its

employees' torts depends upon whether they were acting pursuant to their duties.  The FTCA makes

the United States' waiver of sovereign immunity and its liability under the principle of respondeat

superior coextensive.  Liability and jurisdiction are thus inextricably linked under the FTCA.

This case also presents an additional basis on which the merits and jurisdiction are intertwined.  John David Garcia's Complaint includes a claim for negligent training or supervision. For him to prove this claim, he will be required to show that Ben Garcia was acting in a law enforcement capacity.  Resolving the jurisdictional facts here would effectively resolve some of the same factual issues underlying one of John David Garcia's substantive causes of action.  Jurisdiction is therefore intertwined with the merits of this case.  Because both parties have submitted several additional materials with their briefs, the Court will convert the motion to dismiss into a motion for summary judgment.

## II.    WHETHER BEN GARCIA WAS ACTING IN THE SCOPE OF HIS EMPLOYMENT IS A DISPUTED ISSUE.

Once the standard which the Court will apply to the facts is determined, the scope-of-employment issue falls in place.  New Mexico law governs whether Ben Garcia was acting within the scope of his employment during the incident at St. Augustine Church.  Both John David Garcia and the United States agree on this point, and the Court has no reason to doubt that they are correct. See Henderson v. United States, 429 F.2d at 590 (stating that scope of employment under the FTCA is "to be determined by the principles of respondeat superior of the jurisdiction where the tort occurred").[4]  They also concur on the basic standards to be applied here: whether the act "was something fairly and naturally incidental to the employer's business assigned to the employer's business assigned to the employee," and whether the act "was done while the employee was engaged

_____

[4] Some argument could be made that Isleta law applies.  The parties have not, however, cited to the Court any applicable Isleta law, or suggested that Isleta tort law differs from New Mexico law. Because the Court believes that there are genuine issues of material fact under state law, and denies the motion to dismiss, the parties remain free to apprise the Court in the future if Isleta law is applicable.

in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee." Cain v. Champion Window Co. of Albuquerque, 142 N.M. at 213, 164 P.3d at 94 . Their dispute centers on whether the facts here meet the test. Considered under the summary-judgment standard, there are disputed issues of material fact that preclude the Court from finding that Ben Garcia was not acting in the scope of his employment. Trial is therefore the proper way to resolve the disputed facts, even though the ultimate issue is a jurisdictional one. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006)(noting that jury decides disputed jurisdictional facts where they are also part of element of a claim).

John David Garcia has introduced sufficient evidence from which a rational individual could infer that Ben Garcia was acting in the course of his employment. Isleta police officers are to "[m]aintain security for all residents within the Isleta Indian Reservation," and "[p]rovide law enforcement services to all Pueblo of Isleta residents." Statement of Work at 20. In his deposition, Ben Garcia was asked whether "it fell upon [him], as the police officer, to get in between everybody?" Garcia Depo. at 33:18-20. Ben Garcia agreed. See id. at 33:21. Later in his deposition, he indicated that, after he identified himself as a police officer, he thought of himself as being a police officer at the time. See id. at 51:12-16. In an earlier statement, Ben Garcia also mentioned that people knew he was a police officer and were looking at him to intervene in the unfolding situation. See Garcia Stmt at 1. From these statements, a rational inference could be drawn that Ben Garcia believed that he was acting as a police officer during the incident. Although his deposition also indicates that he did not approach the altercation "on behalf of the Isleta Police Department," Garcia Depo. at 52:11, that creates a contradiction, but does not conclusively establish that he was not so acting, given the other statements. Contrary to the United States' argument, the

Court believes that Ben Garcia's subjective beliefs are relevant to determining whether he was acting as a police officer because John David Garcia must show that Ben Garcia's actions were done "with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on [his] part."  Cain v. Champion Window Co. of Albuquerque, 142 N.M. at 213, 164 P.3d at 94 (emphasis added).

There are also objective indicia from which it can be inferred that Ben Garcia was acting in the scope of his employment.  Multiple pieces of evidence indicate that he identified himself as a police officer during the incident.  See Garcia Stmt. at 1; Garcia Depo. at 51:12-13.  Police officers are not always on duty, but they are usually prepared to act in the line of duty even when off the clock.  Breaking up a disturbance and attempting to restore peace to a situation is one of the things that police officers are expected to do.  It is thus an activity that would flow naturally from Ben Garcia's duties.  See Cain v. Champion Window Co. of Albuquerque, 142 N.M. at 213, 164 P.3d at 94.  John David Garcia also argues that Ben Garcia might have been responding to what he believed was the crime of knowingly engaging in unwanted sexual contact in violation of 18 U.S.C. § 2244(b).  This suggestion strikes the Court as a bit of a stretch, but as a tribal officer, Ben Garcia was also charged with enforcing Pueblo of Isleta law.  See Statement of Work at 20.  Tribal law might cover John David Garcia's alleged conduct, which adds some additional circumstantial evidence that Ben Garcia was acting as  a police officer.

As John David Garcia points out, there is also circumstantial evidence that Ben Garcia's motive was based, at least in part, on maintaining order rather than just assisting his family.  During his deposition, Ben Garcia referred to the women who perhaps helped precipitate the conflict as being "instigators, [who] don't know when to keep their mouth shut and try to make something big out of something small."  Garcia Depo. at 33:10-12.  From this evidence, it could be reasonably

inferred that assisting his family was not a significant motivation for his actions. Particularly given that New Mexico law makes an action performed only in part out of a motivation to further an employer's interest as supporting the action being in the scope of employment, the Court cannot say that it is undisputed that Ben Garcia's acts arose "entirely from some external, independent and personal motive on" his part. Cain v. Champion Window Co. of Albuquerque, 142 N.M. at 213, 164 P.3d at 94.

Narney v. Daniels, which is an older case than Cain v. Champion Window Co. of Albuquerque, seems to add two additional elements absent from the later case: (i) that the act occurs during a period reasonably connected to the authorized employment period; and (ii) that the act occurs in an area reasonably close to the authorized area. See Narney v. Daniels, 115 N.M. at 49, 846 P.2d at 355. Again, however, the Court cannot say that it is undisputed that these factors would not be met here, given that a police officer might, if faced with an appropriate incident, act outside his normal duty hours and normal duty place. Additionally, the encounter took place in the Pueblo of Isleta, presumably within the tribal police department's jurisdiction.

The persuasive value in the United States' arguments mostly lies in attacking the weight to be given to various pieces of evidence. Viewing the evidence under the rule 56 standard, however, and thus drawing all reasonable inference's in John David Garcia's favor, the Court does not believe that these arguments would allow the Court to completely discard the evidence that John David Garcia has presented as irrelevant. Moreover, while Ben Garcia's being in plain clothes and off duty at the time incident began add weight to the United States' position, such facts do not compel the Court to find that he was not acting within the scope of his employment. Evidence indicating that people looked to Ben Garcia to do something because he was police officer, that Ben Garcia identified himself as a police officer, and the similar evidence to which John David Garcia points

-20-

all provide evidence from which it could be determined that Ben Garcia was acting in the scope of his employment.  On summary judgment, such evidence creating a disputed issue of material fact is enough.

### III.   THE COURT CANNOT SAY, ON THE RECORD BEFORE IT, THAT BEN GARCIA'S ACTIONS AT THE TIME OF THE INCIDENT CONSTITUTED ASSAULT AND BATTERY.

On its face, the Complaint does not raise any causes of action for assault or battery.  The United States maintains, however, that the Court must look beyond the labels John David Garcia has chosen and consider the underlying conduct.  Tenth Circuit case law supports this approach, but the underlying conduct is not the clear cut case of assault and battery that the United States presents.  John David Garcia's allegations and the record instead present an uncertain scenario which the Court cannot label unequivocally an example of assault or battery.  Accordingly, the Court will not apply 28 U.S.C. § 2680(h) to bar the claims against the United States at this time.

Section 2680(h) limits the United States' waiver of sovereign immunity for "[a]ny claim arising out of assault, battery, [or other enumerated torts]."  28 U.S.C. § 2680(h).  This limitation does not apply to certain torts, including assault and battery, if the torts result from "acts or omissions of investigative or law enforcement officers of the United States Government."  Id.  In such a situation, the United States is liable under the FTCA as normal.  Whether someone was a federal law enforcement officer thus only comes into play if the claims in a case arise out of an assault, battery, or other listed tort.

It is well established that a plaintiff cannot use creative pleading to avoid falling within § 2680(h)'s exception to the FTCA waiver of sovereign immunity.  See, e.g., Wine v. United States, 705 F.2d 366, 367 (10th Cir. 1983).  The central question then is whether the incident at the St. Augustine Church is essentially an assault or battery.  The case law dealing with § 2680(h) has not

discussed to what courts should look when determining whether a  situation involves assault or

battery.[5]  Instead, the case law has dealt with situations where the conduct at issue was plainly

assault or battery, and the focus was on the breadth of the "arising out of" language in § 2680(h).

See, e.g., United States v. Shearer, 473 U.S. 52, 54-55 (1982)(Burger, C.J., plurality opinion)(stating

death was clearly result of a battery); Wine v. United States, 705 F.2d at 366 (finding fatal shooting

and sexual assault to be battery); Wise v. United States, 8 F.Supp.2d 535, 542 (E.D. Va.

1998)(stating incident clearly battery where someone killed and raped).  In addressing the question

the Court faces, there are two basic options.  The Court can either look to the law of the jurisdiction

in which the tort occurred or else to a generic definition that will create uniformity across

jurisdictions.  Under either New Mexico law, or a more general common-law understanding of

assault and battery, however, the result would be the same.

Battery is generically defined as when a person "acts intending to cause a harmful or

offensive contact with the person of the other or a third person, or an imminent apprehension of such

a contact, and," either "a harmful contact with the person of the other directly or indirectly results,"

Restatement (Second) of Torts § 13 (1965), or "an offensive contact with the person of the other

directly or indirectly results," id. § 18.  "A bodily contact is offensive if it offends a reasonable sense

of personal dignity."  Id. § 19.

The Complaint bears a strong indication of an intentional battery, see Complaint ¶ 13, at 4

("The blow to his head was delivered by Defendant Ben Garcia."), but, viewing the record here and

the extrinsic evidence, the Court cannot definitively characterize the incident as involving an alleged

---

[5] It is likely, however, that § 2680(h) does not turn on state law definitions.  United States v. Neustadt states that § 2680(h)'s scope turns on Congressional intent and that Congress enacted the FTCA with "established tort definitions" in mind.  United States v. Neustadt, 366 U.S. at 707.

assault or battery.  While John David Garcia initially alleged what is clearly battery -- that Ben Garcia "'cold cocked' him," BIA Report at 9 -- he now admits that he never saw the blow and his current theory, supported with evidence, is that it is unclear what happened, although Ben Garcia probably grabbed him and he ended up falling and injuring himself when he hit his head on a pipe. <u>See</u> Tr. at 13:6-14, 14:2-5 (Vollman).  There may not be anything particularly offensive about grabbing someone's arm.  At a minimum, it seems to be a factual issue whether a reasonable person would be offended by the contact.  Nor does it seem that merely grabbing an arm is itself a harmful contact.  The contact may have led to harm, but it is unreasonable to say that it is undisputed the contact which was <u>intended</u> was harmful or carried much risk of harm.  The Court thus cannot say, on the record here, that Ben Garcia intended to cause contact that was objectively either harmful or offensive.

Assault involves placing someone in apprehension of an imminent battery and, like battery, also requires an intent to cause a harmful or offensive contact.  <u>See</u> <u>Restatement (Second) of Torts</u> § 21(1).[6]  The Court does not see any indication in the record before it that would necessarily support an assault claim, but not a battery claim.  In addition to negligence theories, the Complaint

_____

[6] The Restatement provides:

(1) An actor is subject to liability to another for assault if

      (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
      (b) the other is thereby put in such imminent apprehension.

<u>Restatement (Second) of Torts</u> § 21.

-23-

contains a claim for intentional infliction of emotional distress and wrongful and unjustified injury,[7] but does not include any additional facts that would indicate an assault or battery occurred.[8]  While there may be some tension between the theories, the Court is not passing on the merits of any cause of action and there is nothing in the record that would require the Court to find that the incident involved intentional harmful or offensive contact.

New Mexico law tracks the general, common-law definitions of assault and battery.  See State v. Ortega, 113 N.M. 437, 440, 827 P.2d 152, 155 (Ct. App. 1992)(noting that civil and criminal battery have similar elements and using Restatement (Second) of Torts § 18 to define civil battery); Baca v. Velez, 114 N.M. 13, 15, 833 P.2d 1194, 1196 (Ct. App. 1992)(noting that assault requires an "act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery")(internal quotation marks omitted).  Either standard would therefore produce the same result.  While the facts may ultimately unfold in such a way that an assault or battery forms the underlying conduct, at this stage, drawing reasonable inferences in John David Garcia's favor, the Court cannot say with certainty that the alleged incident involves an assault or battery.  Because the Court concludes that the Complaint, fairly read, alleges negligence theories and does not attempt to circumvent § 2680(h), the Court need not decide whether Ben Garcia was a federal law-enforcement officer within the meaning of the statute.  That particular exception comes into play only when it is determined that the allegations involve an assault, battery, or other tort listed in § 2680(h).

---

[7] It is unclear exactly what John David Garcia is pleading in his fourth claim, although perhaps it is prima-facie tort.

[8] Intentional infliction of emotional distress is not one of the listed torts in 28 U.S.C. § 2680(h).  Given Congress' enumeration of specific torts, the Court does not see that such a claim would be barred unless it arose from facts indicative of one of the listed torts.

## IV.   EXHAUSTION OF TRIBAL COURT REMEDIES IS NOT REQUIRED FOR AN FTCA CLAIM.

It is somewhat unclear whether the United States raises failure to exhaust as a defense to the claims against it or whether the United States discusses the issue because it promised the Court at the November 24, 2008 hearing that it would comment on whether the Court had jurisdiction over Ben Garcia individually.  The United States generally outlines the law on exhaustion of tribal-court remedies, but never specifically states that the Court lacks jurisdiction over the United States on these grounds and does not mention the issue in its introduction or conclusion, as it does with to the scope of employment and § 2680(h) issues.  John David Garcia seems to read the United States as raising failure to exhaust as a defense.  <u>See</u> Response at 19 ("Plainly, exhaustion . . . is not a prerequisite for an FTCA claim, as the United States cannot be sued in tribal court.").  The United States' Reply does not address this portion of John David Garcia's Response and notes that "Plaintiff apparently does not want to pursue an action against Defendant Garcia in tribal court." Reply at 11-12.

It seems likely that the United States is responding to the Court's request for information on the jurisdictional issues involving Ben Garcia.  To the extent that the United States may be asserting that the Court lacks jurisdiction over it because of a failure to exhaust, John David Garcia is correct that exhaustion is not required to bring an FTCA action.  As relevant here, under the FTCA, "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages,  . . . for injury or loss of property, or personal injury . . . ."  28 U.S.C. § 1346(b)(1).  Tribal courts are not district courts, and the United States cannot be sued in a tribal court.  <u>See</u> <u>Louis v. United States</u>, 967 F.Supp. 456, 458 (D.N.M. 1997)(Black, J.).  John David Garcia therefore does not need to exhaust his FTCA claim in tribal court before turning to the

federal courts.  See id. at 458-59 (holding that exhaustion of tribal court remedies not required for FTCA claim).  The Court will keep the parties' arguments in mind when ruling on John David Garcia's motion for default judgment against Ben Garcia.

      **IT IS ORDERED** that Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6) is denied.


_____
UNITED STATES DISTRICT JUDGE


*Counsel and Parties*:

Robert B. Martinez
Albuquerque, New Mexico

-- and --

Brad D. Hall
Albuquerque, New Mexico

-- and --

Timothy A. Vollman
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Gregory J. Fouratt
  United States Attorney
Jan Elizabeth Mitchell
  Assistant United States Attorney
Dori Ellen Richards
  Special Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for Defendant United States of*
      *America*

Ben Garcia
Albuquerque, New Mexico

   *Defendant pro se*