## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN DAVID GARCIA,

       Plaintiff,

vs.                                                                          No. CIV 08-0295 JB/WDS

THE UNITED STATES OF AMERICA and
BEN GARCIA,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant United States of America's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, filed December 30, 2009 (Doc. 42); and (ii) the Plaintiff's Rule 56(e) and 56(f) Motion for an Order Refusing USA's Renewed Application for Summary Judgment Until After Intertwined Facts Are Heard at Trial, or Alternatively, for an Order Allowing Plaintiff to Subpoena Several Government Witnesses to Short Depositions for the Response Memorandum, filed January 12, 2010 (Doc. 45). The Court held a hearing on February 12, 2010. The primary issues are: (i) whether the evidence provided by Defendant United States of America conclusively establishes that Ben Garcia was not in the scope of employment during the events of December 9, 2006, in which case the United States would be immune from suit; and (ii) whether the discretionary-function exception to the Federal Tort Claims Act's waiver of sovereign immunity applies to B. Garcia's conduct. The Court finds that the additional evidence provided by the United States does not convince the Court to change the position set forth in its March 30, 2009 Memorandum Opinion and Order (Doc. 24), and to find that B. Garcia was outside the scope of employment as a matter of law. The Court further finds that

application of the discretionary-function exception to the FTCA's waiver of sovereign immunity requires considerations of public policy that are not present in day-to-day law-enforcement activity, but concludes that the training and supervision of police officers are conduct that the discretionary-function exception protects.  The Court will therefore deny the United States' motion in part and grant it in part.  The Court will deny Plaintiff John David Garcia's motion to delay the Court's ruling on the United States' motion until the trial is completed.

## FACTUAL BACKGROUND

This case is about a quarrel in a church on the Isleta Pueblo that resulted in J. Garcia suffering a broken jaw.  J. Garcia has made a federal case out of it by alleging that it was B. Garcia, an Isleta Police Department Officer, and thus a federal employee, who is responsible for J. Garcia's injury.[1]  The facts, with the exception of those supported by the new evidence that the United States attached to this motion, were fully set forth in the Court's prior Memorandum Opinion and Order, filed March 30, 2009 (Doc. 23)("March 30 MOO").

## PROCEDURAL BACKGROUND

J. Garcia asserts in this Complaint for Damages that the Court has jurisdiction over the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA").  He alleges that his "personal injuries . . . were proximately caused by the negligence, wrongful acts and omissions of a person deemed an employee of the United States, on December 9, 2006, as that employee was acting with the scope of his employment as a law enforcement officer of the Pueblo

---

[1] Although B. Garcia was initially a Defendant in this matter, the Court dismissed the claims against him for lack of subject-matter jurisdiction, because J. Garcia failed to properly exhaust his tribal remedies against B. Garcia before filing this suit in the federal district court.  See Memorandum Opinion and Order at 5-8, filed March 30, 2009 (Doc. 24).  The only remaining Defendant is the United States.

of Isleta." Complaint for Damages ¶¶ 4, 7, at 2. One of the primary underlying issues is whether B. Garcia was acting within the scope of his employment when he confronted J. Garcia and when J. Garcia was injured immediately thereafter.

Shortly after J. Garcia filed his suit, the United States moved to dismiss. See Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), filed January 9, 2009 (Doc. 15). The United States' memorandum in support of that motion included attachments and other evidentiary items, as did J. Garcia's response brief. The Court thus treated the motion as one for summary judgment, deciding whether there existed any genuine issue of material fact necessitating a trial. The Court found at least two material, disputed factual issues: (i) whether B. Garcia was acting within the scope of employment under New Mexico law at the time of the December 9, 2005 incident, see March 30 MOO at 17-21; and (ii) whether B. Garcia's actions constituted an assault and battery against J. Garcia, see March 30 MOO at 21-24.

The United States now submits a motion that it intends to be pursuant to rule 56 of the Federal Rules of Civil Procedure, and asks the Court to grant summary judgment in its favor.[2] In its Memorandum of Law, which it filed concurrently with its motion, the United States takes the position that, at the time of the incident which is the subject of this lawsuit, B. Garcia was not acting in a law-enforcement capacity, was not furthering his employer's interest, and thus was not within the scope of his employment as an Isleta Police Officer. See Defendant United States of America's

---

[2] On December 30, 2009, before the United States filed its motion for summary judgment, the United States contacted the office of opposing counsel, Brad Hall. At that time, Mr. Hall's office was closed for the holidays, so the United States' counsel left a detailed message. The United States contends that, because of the nature of this motion, the Court may deem Mr. Hall to have not consented to the Court granting this motion. Whether the United States was unable to secure Mr. Hall's position on the motion before filing, it is clear that J. Garcia opposes the motion, and the Court will thus proceed to decide the United States' motion on its merits.

Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 at 1-2, filed December 30, 2009 (Doc. 43). The United States maintains that the Court therefore has no jurisdiction to entertain J. Garcia's suit against the United States. J. Garcia makes overlapping arguments. First, he asserts that Isleta Pueblo Police impliedly ratified B. Garcia's conduct by not taking disciplinary action against him, bringing him within the scope of his employment. See Plaintiff's Response to [Doc. 43] Defendant USA's Memorandum of Law in Support of Renewed Motion for Summary Judgment at 3-4, filed February 8, 2010 (Doc. 51). J. Garcia also argues that, although B. Garcia was off duty, he announced himself as a police office, acted in a law-enforcement capacity, and acted with a law-enforcement objective, bringing him within the scope of his employment as a police officer under New Mexico law. See Plaintiff's Response at 5-8.

At the hearing on this motion, Jan Mitchell, counsel for the United States, raised another argument: that the Court lacks jurisdiction over the United States because, even if B. Garcia was within the scope of employment, his conduct is subject to the discretionary-function exception to the FTCA's waiver of immunity. See Transcript of Hearing at 16:15-22 (taken February 12, 2010)(Mitchell)("Tr.").[3] If the United States is correct, then even if B. Garcia was acting within the scope of his employment and caused J. Garcia's injury, the United States would still be entitled to sovereign immunity. Mr. Hall started out the hearing by informing the Court that he withdrew his motion (Doc. 45) in part, insofar as he no longer wishes an opportunity to do additional discovery before trial. See Tr. at 3:3-8 (Hall); id. at 75:3-10 (Hall). He explained that all he asks in his motion is for the Court to withhold ruling on the motion for summary judgment until after the bench trial and the collection of the evidence. See id.

---

[3] The citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may have slightly different page and/or line numbers.

## LAW REGARDING SOVEREIGN IMMUNITY

The United States cannot be sued without its consent.  Congressional consent -- a waiver of the traditional principle of sovereign immunity -- is a prerequisite for federal-court jurisdiction.  The plaintiff bears the burden of proving that Congress has waived sovereign immunity for all of his claims.

### 1.      General Principles of Sovereign Immunity.

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983)(citations omitted).  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994): United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).  As with any jurisdictional issue, the party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived.  See James v. United States, 970 F.2d 750, 753 (10th Cir. 1992).  A waiver of sovereign immunity cannot be implied and must be unequivocally expressed. See United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992); United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir. 1996).

### 2.      The FTCA.

The only statutory authority to sue the United States for common-law torts is under the FTCA.  The FTCA waives the United States' sovereign immunity in certain specific tort actions against the United States for money damages.  Congress has explicitly provided, however, that the only proper party in an action under the FTCA is the United States.  See 28 U.S.C. § 2679(a); Romanach v. United States, 579 F. Supp. 1017, 1018 n.1 (D.P.R. 1984)(holding that no suit under the FTCA may lie against any agency of the United States eo nomine); Painter v. F.B.I., 537 F.

Supp. 232, 236 (N.D. Ga. 1982)(holding that "[t]he FBI may not be sued eo nomine").

In enacting the FTCA, Congress defined the terms and conditions under which the United States may be sued in tort.  Section 1346(b) of Title 28, United States Code, provides, in pertinent part:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred.

A companion section of the FTCA provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

The FTCA waives the United States' sovereign immunity for certain negligence claims, but it does so only if a private person, performing the same act as the United States, would be liable under the governing state law.  See 28 U.S.C. § 2674.  These sections ensure that the United States is placed in the same position as a private individual by rendering the United States liable for the tortious conduct of its employees.  The FTCA's waiver of sovereign immunity is limited, however.  If the claim does not fall within the FTCA's express provisions, or if it falls within one of its exceptions, the claim is not cognizable under the FTCA, and the court must deny relief.  See Williams v. United States, 50 F.3d 299, 304-05 (4th Cir. 1995).

### 3.       The Discretionary-Function Exception.

The FTCA contains several exceptions that preclude the United States' liability.  One of these exceptions is the discretionary-function exception, which provides that the FTCA shall not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary-function or duty on the part of a federal agency or an employee of the Government,

whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court of the United States has characterized § 2680(a) as the "boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

The exception must be strictly construed in the United States' favor. See U.S. Dep't of Energy v. Ohio, 503 U.S. 607, 615 (1992)(stating that "[w]aivers of immunity must be strictly construed in favor of the sovereign and not enlarged beyond what the language requires.")(internal citations and quotations omitted). Its application is a threshold jurisdictional issue in any case brought under the FTCA. See Johnson v. U.S. Dep't of Interior, 949 F.2d 332, 335 (10th Cir. 1991).

In Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court enunciated a two-prong analysis for determining when the FTCA's discretionary-function exception applies. See 486 U.S. at 536. See Domme v. United States, 61 F.3d 787, 789-90 (10th Cir. 1995); Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 972-73 (10th Cir. 1994); Kiehn v. United States, 984 F.2d 1100, 1102-03 (10th Cir. 1993). First, the acts or omissions must be "discretionary in nature, acts that 'involve an element of judgment or choice.'" United States v. Gaubert, 499 U.S. 315, 322 (1991)(quoting Berkovitz v. United States, 486 U.S. at 536). Second, the conduct must be "based on considerations of public policy." United States v. Gaubert, 499 U.S. at 323 (quoting Berkovitz v. United States, 486 U.S. at 537).

In applying the Berkovitz v. United States analysis, the question of negligence is irrelevant: "When the government performs a discretionary function, the exception to the FTCA applies regardless of 'whether or not the discretion involved be abused.'" Redmon v. United States, 934 F.2d 1151, 1157 (10th Cir. 1991)(quoting 28 U.S.C. 2680(a)). Where a plaintiff alleges a negligent

omission, it is "'irrelevant whether the [omission] was a matter of deliberate choice, or a mere oversight.'" Kiehn v. United States, 984 F.2d at 1105 (internal quotations omitted). "The failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability." Id. On the other hand, "[c]onduct is not discretionary if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.'" Garcia v. U.S. Air Force, 533 F.3d 1170, 1176 (10th Cir. 2008)(quoting Berkovitz v. United States, 486 U.S. at 536). See Domme v. United States, 61 F.3d at 789-90.

Conduct is protected under the second prong of the analysis in Berkovitz v. United States if it was or could have been, "based on considerations of public policy." Kiehn v. United States, 984 F.2d 1100, 1103, 1105 (10th Cir. 1993)(quoting Berkovitz v. United States, 486 U.S. at 537). This principle is a result of the rule that the second prong requires that the challenged conduct must be, by its nature, "susceptible to policy analysis." United States v. Gaubert, 499 U.S. at 325. Where agency policy allows an employee to exercise discretion, there is a "strong presumption" that the acts authorized by the policy are grounded in public policy. United States v. Gaubert, 499 U.S. at 324. In other words, unless there is a reason to believe otherwise, courts will sometimes find that the mere fact that the government agent was given discretion implies that the agent will exercise that discretion to further the public policy under which he or she was given that discretion.

The FTCA's discretionary-function exception protects the challenged conduct if it involves judgment or choice, and is conduct of a kind that can fairly be considered to be based on public policy. See United States v. Gaubert, 499 U.S. at 324-25. The two-prong test in Berkovitz v. United States applies equally to all government employees, regardless of their rank or position: "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary

function exception applies in a given case." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. at 813. See United States v. Gaubert, 499 U.S. at 325 ("Discretionary conduct is not confined to the policy or planning level."); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. at 811 ("Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.")(internal quotations and citation omitted).

The discretionary-function exception may cover certain law-enforcement investigatory activities. In Hobdy v. United States, 968 F.2d 20 (Table), 1992 WL 149871 (10th Cir. June 26, 1998), the Tenth Circuit found that the decision to investigate the plaintiff, which an investigator for the Criminal Investigation Division of the Office of the Inspector General made, but which allegedly gave rise to invasion-of-privacy and negligence claims, was protected under the discretionary-function exception. See 1992 WL 149871, at *2.[4] In Pooler v. United States, 787 F.2d 868, 871 (3rd Cir.), cert. denied, 479 U.S. 849 (1986), the United States Court of Appeals for the Third Circuit found the discretionary-function exception covered alleged deficiencies in investigative methods that led to the plaintiff's arrest. In so doing, the Third Circuit further stated: "Prosecutorial decisions as to whether, when and against whom to initiate prosecution are

---

[4] In this unpublished Tenth-Circuit case, the panel relied primarily on a case from the United States District Court for the Eastern District of Pennsylvania, rather than its own precedent. See Hobdy v. United States, 1992 WL 149871, at *2 (quoting Bradley v. United States, 615 F. Supp. 206, 209 (E.D. Pa. 1985)). The Court notes that published Tenth Circuit case law tends to consider more strongly the second, public-policy prong of the discretionary-function analysis. The panel that decided Hobdy v. United States, although they cited Berkovitz v. United States once, did not mention the two-pronged Berkovitz v. United States test. Moreover, the Eastern District of Pennsylvania case that the Tenth Circuit panel cited was decided in 1985, three years before the Supreme Court decided Berkovitz v. United States. The Court is thus unsure how strongly it should rely on Hobdy v. United States.

quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." <u>Pooler v. United States</u>, 787 F.2d at 871.[5]  This enforcement and investigatory discretion implicates policy factors on how to best achieve the agency's goals and mission under the statutes and regulations it is responsible for administering.  <u>See</u> <u>Kelly v. United States</u>, 924 F.2d 355, 361-62 (1st Cir. 1991)(noting that decisions to investigate are at the core of law-enforcement activity and are protected by the exception); <u>Doherty v. United States</u>, 905 F. Supp. 54, 56 (D. Mass. 1995) (explaining that process of deciding how and when to seek a search warrant is grounded in policy considerations).

Certain aspects of an investigation may be considered non-discretionary.  For example, if officials fail to follow specific agency mandates or directives governing their conduct, they may not be immune.  <u>See</u> <u>Couzado v. United States</u>, 883 F. Supp. 691, 694-95 (S.D. Fla. 1995), <u>aff'd</u> <u>Couzado v. United States</u>, 105 F.3d 1389, 1395-97 (11th Cir. 1997)(affirming the district court's judgment imposing liability on the United States under the FTCA because a United States Customs and Boarder Patrol agent's failure to divulge critical information and to cooperate with the Drug Enforcement Administration in executing the controlled delivery negligently compromised safety and proximately caused the plaintiffs' injuries.).  Or if the conduct at issue is simply not susceptible to public-policy analysis, it may not be immune.  <u>See</u> <u>United States v. Gaubert</u>, 499 U.S. at 325 n.7 (discussing the act of driving during a mission connected with the agent's official duties as an activity that is within the scope of employment and discretionary, and yet not susceptible to public-

---

[5] <u>Pooler v. United States</u>, like the Eastern District of Pennsylvania case that the Tenth Circuit panel in <u>Hobdy v. United States</u> cited, was decided before the Supreme Court decided <u>Berkovitz v. United States</u>.  Because <u>Berkovitz v. United States</u> was the basis for the modern discretionary-function-exception analysis, cases decided before it are of questionable authority.

policy analysis, therefore not protected under the exception).

In Ortiz v. U.S. Border Patrol, 39 F. Supp. 2d 1321 (D.N.M. 1999)(Black, J.), the Honorable
Bruce Black, United States District Judge, noted that, "in the context of activities peculiar to law
enforcement, some courts have established exceptions to the principle that the proper comparison
in FTCA cases is to private, nongovernment individuals." 39 F. Supp. 2d at 1324. "However, these
cases only serve to illustrate that there is a significant difference under the FTCA between 'private
persons' and government employees, and that the primary inquiry is how a private person in similar
circumstances would be treated under state law." 39 F. Supp. 2d at 1324. The United States
Customs and Border Patrol agents in Ortiz v. U.S. Border Patrol "were not engaged in a function
unique to law enforcement when they stopped to render aid at the accident scene." Id. at 1325.
"Thus, a private analogue for their actions is readily available," and the Border Patrol was "therefore
liable for its agents' actions only to the extent that a private person, in the same circumstances,
would be liable." Id.

The Tenth Circuit seems to place significant weight upon the second prong of the
discretionary-function analysis. In Garcia v. U.S. Air Force, 533 F.3d at 1176, the Tenth Circuit
reviewed the policies underlying the discretionary-function exception:

> The discretionary function exception is designed to protect policymaking by the
> executive and legislative branches of government from judicial "second-guessing."
> United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467
> U.S. 797, 814 . . . (1984). Thus, it "marks the boundary between Congress'
> willingness to impose tort liability upon the United States and its desire to protect
> certain governmental activities from exposure to suit by private individuals." Id. at
> 808 . . . . Among those activities encompassed by the discretionary function
> exception are "the discretionary acts of the Government acting in its role as a
> regulator of the conduct of private individuals." Id. at 813-14 . . . . "The same holds
> true of other administrative action not of a regulatory nature, such as the expenditure
> of Federal funds, [or] the execution of a Federal project . . . ." Id. at 810 . . .
> (quotation omitted).

-11-

533 F.3d at 1176. The Tenth Circuit reminded that, in considering the second-prong, a court should "not consider the employee's 'subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" Id. (quoting United States v. Gaubert, 499 U.S. 315, 325 (1991)).

Other Tenth Circuit cases further suggest that the Tenth Circuit places substantial weight on the second, susceptible-to-public-policy-analysis element of the discretionary-function exception. In Harrell v. United States, 443 F.3d 1231 (10th Cir. 2006), the Tenth Circuit agreed with the district court that whether and how the United States Coast Guard placed buoys in the Missouri river was a matter within its discretion, satisfying the first prong of the analysis. See 443 F.3d at 1233-35. It further agreed with the district court's analysis of the second prong:

> The court readily concludes that the Coast Guard's decisions concerning whether and when to service the buoy at issue in this case were policy-based. As suggested in the pertinent regulation, and as reflected in the record before the court, decisions about whether and when to service the buoy with which Mr. Harrell allided turn on the availability and allocation of agency resources.... Due to the length of the river and the limited number of cutters and personnel available to patrol it, buoys cannot be constantly monitored and the frequency of inspections is dictated by the availability of resources for cutters and personnel. To the extent a discrepancy is known, then a decision concerning the timing of corrective action necessarily takes into account the question of how to allocate limited resources among competing needs. In short, the second prong of the Berkovitz test is met.

443 F.3d at 1236.

In Tew v. United States, 86 F.3d 1003 (10th Cir. 1996), the Tenth Circuit, discussing the FTCA's discretionary-function exception as applied to suits under the Suits in Admiralty Act, considered testimony from the governmental actor at issue in finding that his conduct was taken while considering public policy. See 86 F.3d at 1006. After finding that the statutes and regulations under which the actor performed used permissive language, the Tenth Circuit discussed the public-policy grounds undergirding his decision.

The Coast Guard's discretionary decision to leave the structure unmarked was properly grounded in public policy considerations.  Commander John Dejung, the officer responsible for allocating Coast Guard resources in the region, stated that the primary factor in determining the placement of limited Coast Guard resources was whether there was substantial interstate commercial use of a waterway.  He noted that even if the Illinois River were a navigable waterway, it would not be economically or operationally feasible to dedicate a Coast Guard river tender to mark the river.  Economic considerations such as these are a proper basis for the exercise of discretion. . . .

* * * *

The Corps's discretionary decision not to remove the structure was also properly based on public policy considerations.  The Corps's Acting District Engineer of the Tulsa District stated that the Corps concentrates on new structures and permit applications because of its limited resources.  As mentioned above, the lack of adequate resources is a proper public policy consideration. . . .

Id. (internal citations omitted).

In Domme v. United States, the Tenth Circuit considered whether the discretionary-function exception to the FTCA shielded the United States from the plaintiff's allegation that "the inadequate manner in which DOE implemented their inspection programs failed to assure a safe workplace." 61 F.3d at 791.  After finding that "the regulations allowed the government's employees to exercise choice and discretion," the Tenth Circuit discussed the second branch of the discretionary-function analysis.  It stated: "The Berkovitz Court concluded that Congress intended the discretionary function exception to shield governmental decisions based on considerations of social, economic, and political policy." 61 F.3d at 791.  The Tenth Circuit ultimately concluded that the decisions of Department of Energy were grounded in public policy.

In the instant case, we conclude that the government's choices with regard to its appraisal and inspection program at SNL [Sandia National Laboratories] were based on considerations of public policy.  First, the order directing DOE [the Department of Energy] employees to conduct appraisals of contractor-operated facilities requires them to consider protection of the environment, public health and safety, worker health and safety, and protection of government property in their decisions.  The order further states that the "quality, frequency, and depth of appraisals" for any

-13-

activity on a facility depended upon "the hazard attendant with [that] activit[y]."

Second, our review of the record shows that DOE employees in fact based their inspection decisions on policy considerations. Decisions concerning compliance appraisals were in part shaped by the resources available to DOE. Cf. Kiehn, 984 F.2d at 1107 (holding that a decision by National Park Service based in part on the agency's limited personnel and resources was a judgment based on social, economic, or political policy). DOE employees were forced to determine how to utilize their limited resources to best advance DOE's interest in safety. They also considered whether a particular facility or operation presented a particularly high hazard and whether the facility or operation had a history of incidents raising safety concerns.

Finally, we reiterate that, under the contract between DOE and Sandia, Sandia was primarily responsible for safety at SNL. Because it had only an oversight role, DOE was required to balance its concern for safety against its limited resources. Thus, DOE employees prioritized their appraisals based upon the relative overall hazard associated with each activity, as well as each activity's potential hazard to the environment, to the public, to the workers, and to government property.

61 F.3d 792-93. See Sydnes v. United States, 523 F.3d 1179, 1185-86 (10th Cir. 2008)("We have previously and unqualifiedly held that '[d]ecisions regarding employment and termination' -- the kind of conduct at issue here -- are 'precisely the types of administrative action the discretionary function exception seeks to shield.'")(quoting Richman v. Straley, 48 F.3d 1139, 1146-47 (10th Cir. 1995)); Williams v. United States, 50 F.3d at 309 ("[T]he decision to engage an independent contractor . . . is grounded in policy because in contracting with [the contractor], the United States had to balance the needs of the Premises and the desire to engage an independent contractor against the expense of engaging such services.").

## ANALYSIS

In the memorandum of law that the United States filed concurrently with its motion, the United States makes more-or-less the same argument that it made in its motion to dismiss: that B. Garcia was not acting within the scope of his employment when he allegedly injured J. Garcia. See Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or

12(b)(6), filed January 9, 2009 (Doc. 15). The United States presents some new evidence and some new authority for the Court to consider. At the hearing, the United States' counsel raised the additional argument that, if B. Garcia was acting within the scope of his employment, he was also performing a discretionary function and therefore the discretionary-function exception to the FTCA's waiver of sovereign immunity applies, and the United States is immune from suit on that basis. Ultimately, the Court holds to the analysis in its March 30, 2009 Memorandum Opinion and Order finding that whether B. Garcia was within the scope of employment is a fact issue that must be vetted at trial. The Court also finds that the FTCA's discretionary-function exception does not apply to the actions of B. Garcia on December 9, 2006.

I.      **THE COURT DENIES J. GARCIA'S MOTION TO POSTPONE RULING.**

In his motion, after his concessions at the hearing, J. Garcia simply asks the Court to postpone ruling on the United States' motion for summary judgment until the parties have properly expanded the factual record at trial. The United States points out several flaws in J. Garcia's case management, and insists that his need for additional discovery and/or facts are his own fault. The Court notes that, if the issues the United States raises in its own motion have merit, they are jurisdictional and require the Court's prompt attention. The Court thus believes the proper course is to address the United States' summary-judgment arguments, most of which are legal in nature. If the Court determines that factual issues remains to be resolved, it shall deny the motion, effectively granting J. Garcia the relief he seeks.

II.     **THE EVIDENCE PROVIDED BY THE UNITED STATES DOES NOT ESTABLISH THAT B. GARCIA WAS ACTING OUTSIDE THE SCOPE OF HIS EMPLOYMENT AS A MATTER OF LAW.**

The issue raised in the United States' summary judgment brief is whether the Court can find, as a matter of law, that B. Garcia was not in the scope of his employment during the events of

December 9, 2006.  This issue is the same that the Court addressed in its March 30 MOO.  At that time, the Court was ruling on a motion to dismiss, but, because the parties submitted evidence with the motion and response, the Court converted the motion to dismiss into a motion for summary judgment.  See March 30 MOO at 14-17.  The arguments in the briefs on this motion are very similar, but the United States adds two new factors: (i) some additional evidence that sheds light on the intent of B. Garcia's employer whether B. Garcia was acting in the scope of his employment; and (ii) a recent case from the Court of Appeals of New Mexico which, the United States argues, shows that an employee cannot be acting within the scope of employment when engaging in conduct of which the employer disapproves.

The evidence that the United States attached are: (i) deposition transcripts from J. Garcia and B. Garcia; (ii) a declaration from Vernon Alvarez, the current Chief of Police for the Isleta Pueblo Police Department ("IPPD"); and (iii) the IPPD's manual of standard operating procedures ("Isleta SOPs").  The United States contends that this evidence shows that, if B. Garcia engaged in the conduct of which he is accused, he would be violating the SOPs and therefore not acting within the scope of employment.  The argument is premised on the notion that, if B. Garcia was engaging in conduct that the employer forbids or of which the employer disapproves, he cannot be doing so in the scope of his employment.

The United States argues that B. Garcia's alleged conduct violated § 2-03-2 of the Isleta SOPs, which reads:

> 2-03-2 PERMITTED OFF-DUTY ARREST
>
> When off-duty and within the legal jurisdiction of this police department, a police officer may make an arrest only when:
>
> A.      The arresting officer is not personally involved in the incident underlying the arrest; and

> B.      There is an immediate need for the prevention of a crime or apprehension of a suspect; and
>
> C.      The crime would be charged as a booking offense requiring a custodial arrest; and
>
> D.      The arresting officer is in possession of appropriate police identification (Badge & I.D.).

Pueblo of Isleta Police Department Standard Operating Procedures § 2-03-2, filed December 30, 2009 (Doc. 43-4)("Isleta SOPs").  The United States alleges B. Garcia violated this SOP because he was "personally involved" in the incident, which the SOPs define as: "Where the off-duty officer, a family member, or a friend becomes engaged in a dispute or incident with the person to be arrested [unless] the police officer himself is a victim of a crime."  Isleta SOPs § 2-03.  B. Garcia's conduct might also have violated § 2-03-4, which prohibits a police officer from making an off-duty arrest "[w]hen the arresting officer is personally involved in the incident underlying the arrest."  Isleta SOPs § 2-03-4.  If B. Garcia's conduct constituted an arrest of J. Garcia, he may have violated both of these provisions because B. Garcia was attending a family wedding and J. Garcia was allegedly harassing one of B. Garcia's family members, thereby making B. Garcia "personally involved" in the incident.  Finally, the United States argues that B. Garcia was in violation of SOP § 2-03-3B, which states: "Except as allowed by this policy, off-duty officers should not enforce minor violations such as harassment, disorderly conduct or other quality-of-life offenses."  The United States asserts that whatever the conduct in which B. Garcia might have suspected J. Garcia was engaged was only a minor violation, and thus he "should not" have arrested J. Garcia.  In both instances, however, it is not clear whether B. Garcia's conduct would have violated the SOP. Sections 2-03-2 and 2-03-4 both refer to when an off-duty officer may make an arrest, and it is doubtful whether B. Garcia's conduct could constitute an arrest under the SOPs, which the SOPs

define as: "To seize, keep or detain in custody by authority of law."  Section 2-03-3 uses the term "should," implying that officers might have discretion in deciding whether to enforce minor violations while off duty.  On the other hand, the Court has nothing that might help the Court construe the SOPs and cannot be sure how definitive IPPD officers are instructed to consider the word "should."

Nevertheless, assuming B. Garcia violated one of the above SOPs, the Court is not convinced that such violation forecloses the need for a trial.  The United States relies on <u>Lessard v. Coronado Paint & Decorating Center, Inc.</u>, 142 N.M. 583, 168 P.3d 155 (2007), to support its argument that, where the employer disapproves of or forbids conduct, engaging in that conduct cannot be in the scope of employment.  <u>Lessard v. Coronado Paint & Decorating Center, Inc.</u>, however, is inapposite. It deals with a very specific area of scope-of-employment law: the coming-and-going rule, which generally states that an employee is <u>not</u> in the scope of employment when driving too and from work.  <u>See</u> <u>Lessard v. Coronado Paint & Decorating Ctr., Inc.</u>, 142 N.M. at 589, 168 P.3d at 161 ("[T]he general rule precludes imposing vicarious liability on an employer for its employee's negligent use of a personal vehicle while driving to and from work.")(citing <u>Nabors v. Harwood Homes, Inc.</u>, 77 N.M. 406, 408, 423 P.2d 602, 603 (1967)).  The cases that <u>Lessard v. Coronado Paint & Decorating Center, Inc.</u> cites in that portion of the opinion deal with liability for car accidents which occur when the employee is going to or from work.  <u>See</u> 142 N.M. at 161-62, 168 P.3d at 589-90.  The Court of Appeals of New Mexico was dealing with the issue of under what circumstances an employer will be liable under the doctrine of *respondeat superior* for an employee negligently getting in a car accident while coming or going from work -- an exception to the coming-and-going rule of non-liability.  There is language in that case indicating that the scope-of-employment rule under New Mexico law is as the Court elaborated on it in its March 30 MOO.  The

-18-

Court of Appeals of New Mexico then states: "Despite the seemingly straightforward definition provided by the jury instructions, our courts have repeatedly observed that 'it is impossible to state the rule . . . briefly and comprehensively so as to make it clearly applicable to all cases, because of the ever-varying facts of each particular case.'"  142 N.M. at 589, 168 P.3d at 161.  And the Court of Appeals followed these statements about the scope-of-employment rule in New Mexico by separating the remainder of its exposition on the law: "We now turn to the rule regarding scope of employment in automobile accident cases." Id. at 589, 168 P.3d at 161 (emphasis added).

The Court does not read Lessard v. Coronado Paint & Decorating Center, Inc. to create a general exception to the *respondeat superior* doctrine.  The case, broadly read, deals with a situation in which a person who is already, by operation of a legal rule, considered not to be within the scope of employment, will again be found to be within the scope of employment.  Narrowly read, it sets forth only the rule when an employer can be held liable for an employee's car accident when that employee is driving to or from work.  The Court is not comfortable extending either rule to the entirety of New Mexico *respondeat superior* law.  The Court thus finds that Lessard v. Coronado Paint & Decorating Center, Inc. does not support the United States' conclusion that, in this case, the Court should not weigh the four factors set forth in the Court's March 30 MOO.  See March 30 MOO at 13 (citing Narney v. Daniels, 115 N.M. 41, 49, 846 P.3d 347, 355 (Ct. App 1992)).  See also Lessard v. Coronado Paint & Decorating Ctr., Inc., 142 N.M. at 588, 168 P.3d at 160 (quoting Narney v. Daniels, 115 N.M. at 49, 846 P.3d at 355).  The elements set forth in the New Mexico case law are straightforward, fact-specific, and do not appear to contain an exception for actions performed on the employers behalf, but in a way that the employer does not desire.[6]

---

[6] For example, Jack Bauer, of the television series "24," is constantly "breaking protocol" and performing his duties by means that his superiors do not authorize -- a frequent source of

The Court also finds that the United States' new evidence does not conclusively show that B. Garcia was acting outside the scope of employment during the December 9, 2005 incident.  The evidence might demonstrate that B. Garcia was acting in contravention of the SOPs – though, the Court notes that the provision which the United States most strongly argues B. Garcia violated uses the word "should," rather than "must" or "shall" -- but the Court is not convinced that, under New Mexico law, an employee is, as a matter of law, always outside the scope of employment when doing something that the employer considers improper.  The Court believes that, under certain circumstances, an employee could violate the employer's express policy, but, because it furthers the employer's interests, the conduct may be acceptable to the employer in that circumstance and be squarely within the employee's scope of employment.  The United States' new evidence may tip the scales further in its favor regarding the factual issue whether B. Garcia was in the scope of employment when the December 9, 2005 incident occurred, but does not render it something the Court can decide as a matter of law.    The Court will therefore stand by the analysis in its March 30 MOO and will not grant the United States' motion for summary judgment on this ground.[7]

---

contention between himself and other characters in the show.  On the other hand, he is nearly always performing actions that are "the kind [he] is employed to perform" because he is stopping terrorists. He performs his duties during a period reasonably connected to the authorized employment period, which, in his line of work, is around the clock.  He usually performs the duties in an area reasonably close to the authorized area.  Finally, he is generally actuated, at least in part -- often entirely -- by a purpose to serve his employer, the United States.  See Narney v. Daniels, 115 N.M. at 49, 846 P.3d at 355 (listing the four elements).  The Court doubts that, under New Mexico law, except in some of the most extreme scenarios, Jack Bauer would be found to be outside the scope of employment.

[7] The Court is also somewhat concerned with how the United States' proposed rule of New Mexico law -- where conduct violates department policy it is outside the scope of employment and therefore not actionable under the FTCA -- interacts with its discretionary-function analysis.  If conduct that violates SOPs is, ipso facto, not within the scope of employment, and conduct that is not governed by SOPs falls within the discretionary-function exception, then claims against agents of the United States would be limited to those arising from conduct that fully complies with mandatory SOPs, which seems to be the least culpable conduct with regard to the agent.  It is, of

III.    THE DISCRETIONARY-FUNCTION EXCEPTION APPLIES ONLY TO
J. GARCIA'S NEGLIGENT TRAINING AND SUPERVISION CLAIM.

The United States did not raise the discretionary-function-exception issue until the hearing on this motion.  The argument got somewhat confused during the argument, as it became unclear precisely what Ms. Mitchell was arguing the discretionary-function exception barred.  She began her argument by asserting that the exception bars J. Garcia's claims for negligent training and supervision -- J. Garcia's third cause of action -- because the IPPD exercises discretion in how it trains and supervises its employees.  See Tr. at 17:12-19 (Mitchell).  She then cited the Court to several cases from the United States Court of Appeals for the Eleventh Circuit that implied that, sometimes, on-the-street law-enforcement conduct can fall under the discretionary-function exception and would thus not subject the United States to liability.  See id. at 17:20-18:11 (Mitchell).  Perhaps noting another potential argument, she then shifted to discuss B. Garcia's conduct and argued that it fell within the exception.  See id. at 18:12-19:7 (Mitchell).  Her argument was relatively silent on the second prong of the discretionary-function analysis -- how B. Garcia's actions inherently involved considerations of public policy.  See United States v. Gaubert, 499 U.S. at 323.  Mr. Hall argued that the discretionary-function exception does not apply to the claims aimed at B. Garcia's conduct, or to the negligent training and supervision claim.  See Tr. at 40:2-41:14 (Hall).  The Court requires additional facts to determine whether the discretionary-function exception applies to B. Garcia's conduct.  The Court concludes, however, that the exception applies to J. Garcia's claim for negligent training and supervision.

_____

course, the province of the State of New Mexico to decide whether to hold that conduct of which the employer disapproves is never within the scope of employment, and thus this catch-22 does not necessarily uncover a flaw in the United States' argument, but it nonetheless strikes the Court as an inequitable result.

**A.      FACTUAL ISSUES STAND IN THE WAY OF THE COURT DETERMINING WHETHER B. GARCIA'S CONDUCT WAS DISCRETIONARY.**

The first prong in the discretionary-function analysis is whether the government official's conduct was discretionary.  Conduct is considered discretionary if it involves some element of discretion or choice.  See United States v. Gaubert, 499 U.S. at 322; Berkovitz v. United States, 486 U.S. at 536.  Even if the discretion is abused, so long as the discretion exists, the first element of the discretionary-function exception is satisfied.  See Redmon v. United States, 934 F.2d at 1157.  If a federal law, regulation, or policy mandates or prohibits the conduct, however, it is not discretionary, because the official has no proper choice but to comply with that law, regulation, or policy.  See Garcia v. U.S. Air Force, 533 F.3d at 1176; Sydnes v. United States, 523 F.3d at 1184 ("To overcome the discretionary function exception . . . plaintiffs must show that the federal employee's discretion was limited by 'a federal statute, regulation, or policy,'")(quoting Berkovitz v. United States, 486 U.S. at 536)(emphasis removed).

On the record before it, the Court cannot determine whether B. Garcia was exercising discretion for two reasons.  First, assuming B. Garcia was "enforc[ing a] minor violation" as stated in Isleta SOPs § 2-03-3, the Court does not believe it should construe that provision as granting B. Garcia discretion as a matter of law.  Section 2-03-3, which states circumstances under which an off-duty officer "should not" engage in certain conduct, might be construed more strictly in practice than the language suggests.  Some might consider the word "should" to be permissive, granting discretion, while others might consider it to exhibit a mandatory obligation.  For example, The American Heritage Dictionary of the English Language includes as definitions of the word "should" both of the following: (i) "**1.** Used to express obligation or duty;" and (ii) "**2.** Used to express probability or expectation."  The American Heritage Dictionary of the English Language at 1670

(3d ed. 1992).  See Wiktionary.org, should, http://en.wiktionary.org/wiki/should ("*Should* has, as

its most common meaning in modern English, the sense *ought* as in *I should go, but I don't see how*

*I can.* . . . Contrast with stronger auxiliary verb *must*, which indicates that the subject is required to

execute the predicate.")(italics in original).  The Court believes that testimony of the witnesses in

the upcoming trial will aid the Court in determining the meaning of the Isleta SOPs § 2-03-2.  In

Kelly v. United States, the United States Court of Appeals for the First Circuit stated,

> [I]n regard to the first part of the discretionary function test, "the proper inquiry must
> center on the amount of discretion actually held and exercised by the government
> employees whose actions or omissions are at issue[,]" [but] [a] regulation which
> straightforwardly strips all discretion might well be beyond the reach of 28 U.S.C.
> § 2680(a), even if ignored in practice.

924 F.2d at 360 (emphasis added).

      At the hearing, Mr. Hall argued that the "precise conduct at issue" was whatever caused

J. Garcia's broken jaw, and that was B. Garcia's use of a take-down maneuver, which was the

subject of B. Garcia's police training, and thus non-discretionary.  The Court disagrees that being

trained in how to execute a take-down would make the decision to use a take-down

non-discretionary.  There is a substantial amount of discretion afforded officers in how they do their

job, and that discretion is then boxed, sometimes broadly, within the confines of police policy,

federal law, and constitutional civil rights.  The Court does not doubt that, if B. Garcia used a take-

down maneuver on J. Garcia, his decision to do so, in the abstract, could be considered

discretionary.  If there is a policy provision stating otherwise, it has not been presented to the Court.

Taken to the extreme, if something so broad as the fact that the conduct would be tortious could strip

a government agent of protection under the discretionary-function exception, the exception would

lack purpose because the only conduct it protects could not subject the actor to liability.

      Second, the Court cannot be sure in what conduct B. Garcia was attempting to engage when

he encountered J. Garcia.  B. Garcia might have observed what he believed to be a minor violation of the law and intended to intervene as a police officer to put it to rest.  Assuming that the word "should" in the Isleta SOPs § 2-03-3 means that B. Garcia had discretion to intervene, he was exercising his discretion and the first element of the exception is met.  On the other hand, if B. Garcia thought, for whatever reason, that he had probable cause to arrest J. Garcia and was attempting to do so, Isleta SOPs §§ 2-30-2 and 2-30-4 prohibit that conduct under the circumstances with the more definite word, "may."  Isleta SOPs § 2-30-2 ("When off-duty . . . a police officer <u>may</u> make an arrest <u>only</u> when . . . [t]he arresting officer is not personally involved . . . .")(emphasis added); <u>id.</u> § 2-30-4 ("Police officers of this police department <u>may not</u> make an arrest off-duty . . . [w]hen the arresting officer is personally involved in the incident underlying the arrest.")(emphasis added).  If that were the case, B. Garcia would be acting under a direct policy mandate and his conduct would not be discretionary.  <u>See</u> <u>Garcia v. U.S. Air Force</u>, 533 F.3d at 1176.  The Court thus finds that factual issues stand in the way of the Court concluding that B. Garcia's conduct was discretionary.

> **B.    THE DISCRETIONARY FUNCTION DOES NOT PROTECT B. GARCIA'S CONDUCT, BECAUSE IT DOES NOT INVOLVE SIGNIFICANT POLICY CONSIDERATIONS.**

The Court is not, however, convinced that B. Garcia's conduct is activity that the FTCA's discretionary-function exception was intended to protect.  The Supreme Court, in <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, found that Congress' intention in creating the exception was "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  467 U.S. at 814.  The Tenth Circuit has stated that the exception is "designed to protect policymaking by the executive and legislative branches of government from judicial

'second-guessing.'"   Garcia v. U.S. Air Force, 533 F.3d at 1176 (quoting United States v. S.A.

Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. at 814)).   The Court concludes

that, in this case, this latter element is unmet.

      If one were to think creatively, one could always find some policy or other that one's actions

might impact.  With law-enforcement personnel, every time they step forward to attempt to enforce

the laws, they must consider whether their conduct is likely to place innocent lives at risk, which

could be called a consideration of public policy.   The Court cannot reasonably find that this

consideration is the public policy analysis that the discretionary-function exception is intended to

protect, else the exception would swallow the rule, and there would rarely, if ever, be a waiver of

sovereign immunity for any federal governmental activity.   That result does not appear to be what

Congress intended.   In one of the seminal cases on the discretionary-function exception, the

Supreme Court clearly contemplated that simply because a government official has discretion does

not mean that his or her actions are inherently grounded in public policy considerations:

> There are obviously discretionary acts performed by a Government agent that are
> within the scope of his employment but not within the discretionary function
> exception because these acts cannot be said to be based on the purposes that the
> regulatory regime seeks to accomplish.  If one of the officials involved in this case
> drove an automobile on a mission connected with his official duties and negligently
> collided with another car, the exception would not apply.  Although driving requires
> the constant exercise of discretion, the official's decisions in exercising that
> discretion can hardly be said to be grounded in regulatory policy.

United States v. Gaubert, 499 U.S. at 325 n.7.  See Bell v. United States, 127 F.3d 1226, 1230 n.5

(10th Cir. 1997)("Of course, not all discretionary decisions are policy decisions.").

      The discretion that may be at issue in this case -- whether and in what way to enforce the

laws -- does not seem to be in the same class as those that the Supreme Court or the Tenth Circuit

has seen fit to protect by way of the discretionary-function exception.  A police officer on the street

does not generally consider "budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition," as one might when making hiring-and-firing decisions.  See Sydnes v. United States, 523 F.3d at 1186 (quoting Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997), and citing Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995)).  The officer is unlikely to be concerned about the management of department resources beyond whether he or she will have the resources necessary to do his or her job.  See Tew v. United States, 86 F.3d at 1006; Domme v. United States, 61 F.3d at 792-93.  The Court does not underestimate the skill, intellect, bravery, and commitment necessary to be a law-enforcement officer, but the Court finds it unlikely that the officer, in fighting crime on a day-to-day basis, assesses the larger, overarching policy ramifications of his or her conduct.  Rather, it seems likely that, at any given time, an officer is concerned only with the immediate effects of his or her actions -- whether he or she will catch the criminal, avenge the wrong done to the victim, create a danger to bystanders, or obtain a conviction.  The raison d'être of the police officer on the street is to act.  In short, the Court finds that day-to-day law enforcement is not the kind of conduct that is, as a general proposition, fairly susceptible to public-policy analysis.  The Court therefore finds that the discretionary-function exception does not shield B. Garcia's alleged conduct.  The Court will thus largely deny the motion for summary judgment.[8]

---

[8] The Court acknowledges that there is generally a presumption that, when the government agent is granted discretion, that discretion is exercised with considerations of public policy.  See Bell v. United States, 127 F.3d at 1230 n.5.  That presumption, however, can be overcome with allegations demonstrating that the conduct at issue is "not of the kind that can be said to be grounded in the policy of the regulatory regime."  Id.  The Court makes its finding that day-to-day law enforcement is not conduct that can be said to be grounded in policy considerations on the basis of the record before it and the cases it has reviewed applying that exception.

### C.     THE DISCRETIONARY-FUNCTION EXCEPTION BARS J. GARCIA'S CLAIM OF NEGLIGENT TRAINING AND SUPERVISION.

The discretionary-function exception to the FTCA's sovereign-immunity waiver bars one of J. Garcia's claims: his claim against the United States for negligent supervision and training.  The manner in which a police department trains police officers appears to be a function that carries with it a large measure of discretion.  For each topic about which a department might train its officers -- proper procedures for search and seizure, reading of Miranda[9] warnings, the rights that a criminal suspect has before being officially charged, when and how to use force, when and how to use deadly force, firearms training, tactical or defensive driving -- there is the initial layer of discretion: does the department train the officer on this topic?  And then there is a broader array of discretion in selecting what about each topic the officer should be taught, and how the instructor should teach it.

Furthermore, a police department's training of its officers involves substantial policy considerations.  Training costs money, and therefore the department must consider what officers to train regarding what topics considering how much money the department has available.  See Tew v. United States, 86 F.3d at 1006 (holding that budget considerations constitute considerations of public policy, justifying application of the discretionary-function exception); Domme v. United States, 61 F.3d 792-93 (holding considerations of how to manage limited resources was an appropriate policy consideration); Williams v. United States, 50 F.3d at 309 ("[T]he decision . . . is grounded in policy because . . . the United States has to balance the needs . . . and desire to engage an independent contractor against the expense of engaging such services.").  In making that decision, the department must also consider that certain training modules enhance the safety of the general public, such as proper firearms and vehicular training, and some training increases the likelihood

---

[9] Miranda v. Arizona, 384 U.S. 436 (1966).

of successfully prosecuting suspects apprehended in criminal investigations, such as Fourth- and Fifth-Amendment training.  The training specifically involved in this case, when an off-duty officer may or should step in to quell a disturbance or make an arrest, also involves these considerations. For instance, the department may believe that the officers can read the SOPs regarding off-duty conduct and adequately understand them, and therefore that having a formal training module would not be cost effective for the department, given how much other training the officers need.  In short, the Court finds that the training and supervision of police officers is conduct that the discretionary-function exception protects.

   **IT IS ORDERED** that Defendant United States of America's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 is granted in part and denied in part.  The Court grants summary judgment as to J. Garcia's claim against the United States for negligent training and supervision.  The Plaintiff's Rule 56(e) and 56(f) Motion for an Order Refusing USA's Renewed Application for Summary Judgment Until After Intertwined Facts Are Heard at Trial, or Alternatively, for an Order Allowing Plaintiff to Subpoena Several Government Witnesses to Short Depositions for the Response Memorandum is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Robert B. Martinez
Albuquerque, New Mexico

-- and --

-28-

Timothy A. Vollman
Albuquerque, New Mexico

-- and --

Brad D. Hall
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Gregory J. Fouratt
  United States Attorney
Jan Elizabeth Mitchell
  Assistant United States Attorney
Dori Ellen Richards
  Special Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for Defendant United States of America*

Ben Garcia
Albuquerque, New Mexico

     *Defendant pro se*